**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYMOND KELLY and  <br>PATRICIA KELLY, h/w  <br>    *Plaintiffs*, | : | |
| v. | : <br> : | CIVIL ACTION  <br>NO. 20-5661 |
| PROGRESSIVE ADVANCED  <br>INSURANCE COMPANY  <br>    *Defendant*. | : | |

## MEMORANDUM

**Berle M. Schiller,  J.**                                                                                   **December 5, 2022**

### I.      Introduction

Plaintiffs Raymond and Patricia Kelly (husband and wife) commenced the above-captioned action against their motor vehicle insurance carrier, Progressive Advanced Insurance Company, alleging improper denial of Underinsured Motorist benefits and bad faith.  Plaintiffs' originally-filed Complaint consisted of four (4) counts against Defendant: Breach of Contract for Underinsured Motorist Benefits (Count I), Loss of Consortium (Count II), Violation of Pennsylvania's Bad Faith Statute (Count III), and Violation of the Pennsylvania Unfair Insurance Practice Act ("UIPA") and "Consumer Protection Act" (Count IV).  Defendant filed a Motion to Dismiss Counts III and IV of Plaintiff's Complaint.  Plaintiffs conceded to dismissal of Count IV and this Court granted the motion as to Count III, with leave for Plaintiffs to amend.  Upon amendment, Plaintiffs pursue only one of their previously asserted claims: Bad Faith. Defendant again seeks dismissal of said claim and for the reasons set forth below, its Motion to Dismiss Plaintiffs' Amended Complaint shall be granted.

## II.     Background

### A.  The Accident and Injuries

On November 6, 2016, Plaintiff Raymond Kelly was involved in a motor vehicle collision while stopped at a red traffic light when motorist Perry Miller struck a vehicle being driven by Kathleen Walsh, who in turn struck Plaintiffs' vehicle.  (Am. Compl. ¶ 8.)

Plaintiffs allege that as a direct and proximate result of Miller's negligence, Raymond Kelly suffered "serious bodily injury," requiring hospitalizations and neck surgery.  (Am. Compl. ¶¶ 10-11.)  Specifically, Raymond Kelly's injuries included: neural foraminal compression and cord abutment at C3-C4 and C6-C7; severe injury, damage, exacerbation and/or aggravation of previously asymptomatic conditions of his cervical spine; weakness of upper extremities; numbness and tingling of his arm and fingers; headaches; lumbar spine strain and sprain; left rotator cuff capsule sprain; injury to the left scapular/shoulder region; angina pectoris; injury, damage, exacerbation and/or aggravation of previously asymptomatic cardiac conditions; chest pain; chest tightness; light-headedness; nausea; myocardial ischemia; and, injury to nerves and his nervous system.  (Am. Compl. ¶ 11.)

### B.  Insurance of Parties Involved and Allegations of Bad Faith

At the time of the incident, Perry Miller had motor vehicle insurance in effect through Geico Insurance Company.  (Am. Compl. ¶ 12.)  After institution of litigation for Third-Party claims, Geico Insurance Company offered Plaintiffs two hundred and seventy-five thousand dollars ($275,000.00) of the three hundred thousand-dollar ($300,000.00) policy limit.  (Am. Compl. ¶ 12.)  Prior to acceptance of Geico's offer, Plaintiffs obtained Consent to Settle from Defendant, with the expressed intent to pursue Underinsured Motorist Benefits from Defendant. (Am. Compl. ¶ 13.)  Plaintiffs ultimately paid Independence Blue Cross (and its Administrator,

the Equian Company) $28,869.70 of the settlement proceeds received from Geico in resolution of the underlying Third-Party litigation against Perry Miller. (Am. Compl. ¶ 14.) These payments were made to satisfy a subrogation lien for medical services and bills paid by Independence Blue Cross to treat Raymond Kelly's injuries. (Am. Compl. ¶ 14.)

Upon resolution of their Third-Party action against Miller, Plaintiffs made a claim for Underinsured Motorist Benefits under the Progressive policy. (Am. Compl. ¶ 15.) After reviewing Plaintiffs' medical documents and other materials related to the Third-Party action, Defendant offered Plaintiffs Five Thousand Dollars ($5,000.00) as full and final settlement of their claims for Underinsured Motorist coverage. (Am. Compl. ¶ 16.) Plaintiffs rejected said offer and commenced the instant litigation. (Am. Compl. ¶ 20.)

For purposes of the Underinsured Motorist Benefits claim by Plaintiffs, counsel for Defendant took Plaintiff Raymond Kelly's deposition.[1] (Am. Compl. ¶ 21.) Shortly thereafter, Defendant offered Plaintiffs the full policy limits to settle their Underinsured Motorist Benefit claims. (Am. Compl. ¶ 21.) The Release utilized in the settlement of Plaintiffs' Underinsured Motorist claims contained a stipulation that Counts I (Breach of Contract) and II (Loss of Consortium) of Plaintiffs' originally filed Complaint be dismissed, with all parties to bear their own costs. (ECF No. 13-2 at 4 ¶ 2(g).) Accordingly, Plaintiffs' Bad Faith claim remains intact and is the subject of the instant Motion.

---

[1] Plaintiffs interchange the terms "deposition" and "Statement Under Oath" in their Amended Complaint and Response to the instant Motion. Said inconsistency is inconsequential to this Court's assessment.

**III.     Standard of Review**

Rule 12(b)(6) provides for dismissal of a Complaint, in whole or in part, for failure to state a claim upon which legal relief can be granted.  In deciding a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318 (3d Cir. 2008) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  While these claims do not require detailed facts, "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  A complaint must "show" the plaintiff is entitled to relief. *Id*. (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234-235 (3d Cir. 2008)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings, Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2008)); *see also Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  In the Third Circuit, the court's review "is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate when, even assuming all of a plaintiff's claims as true, said plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If a plaintiff does not "nudge [his/her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*.

IV.     Discussion

       **A. Sufficiency of Bad Faith Claim**

As stated above, the sole issue for review by this Court, is whether Plaintiffs have sufficiently alleged a claim for bad faith under 42 Pa. C.S. § 8371.

It is well settled that:

> Under Pennsylvania law, an insured may bring a statutory bad faith claim against their insurer. Bad faith is distinct from any underlying breach of contract claim, and extends to the handling of UIM claim.
>
> To state a claim for bad faith under Section 8371, an insured must allege facts that plausibly establish: (1) the insurer had no reasonable basis for its actions; and (2) that the insurer knew of or recklessly disregarded the fact that it lacked a reasonable basis for its conduct. [A]ctions constituting bad faith are not limited solely to a denial of coverage—bad faith may also include a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, or failure to promptly acknowledge or act on claims. Bad faith can also include poor claims-handling, the insurer's failure to act with diligence or respond to the insured, scattershot investigation, and similar conduct.

*Faith v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 21-0013, 2021 U.S. Dist. LEXIS 169723, at *5-6 (W.D. Pa. Sept. 8, 2021) (internal quotation marks and citations omitted); *see also Ironshore Specialty Ins. Co. v. Conemaugh Health Sys.,* 423 F. Supp. 3d 139, 155 (W.D. Pa. 2019) ("[B]ad faith may also include a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, or failure to promptly acknowledge or act on claims [as well as] poor claims-handling, the insurer's failure to act with diligence or respond to the insured, scattershot investigation, and similar conduct.") (internal citations omitted).

However, "[i]n alleging bad faith in the context of a UIM benefits dispute, a "plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." *O'Brien v. Liberty Mut. Ins.*, Civil Action No. 21-1234, 2021 U.S. Dist. LEXIS 140495, at *5-6 (E.D. Pa. July 28, 2021) (quoting *Pierchalski v. Pryor*, No. 19-CV-01352, 2020 U.S. Dist. LEXIS 187520, at *15 (W.D. Pa. Oct. 9, 2020). To that end, a Complaint alleging bad faith "must specifically include facts to address who, what, where, when, and how the alleged bad faith conduct occurred." *Shetayh v. State Farm. Fire & Cas. Co.*, No. 5:20-CV-00693, 2020 U.S. Dist. LEXIS 39036, at *7 (E.D. Pa. March 6, 2020); *see also Clarke v. Liberty Mut. Ins. Co.,* NO. 3:18-CV-1925, 2019 U.S. Dist. LEXIS 21507, at *9 (M.D. Pa. Feb. 11, 2019) ("In deciding whether an insurer had a reasonable basis for denying benefits, a court must examine what factors the insurer considered in evaluating a claim. 'Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured.'") (citations omitted). "Courts in this Circuit have routinely dismissed bad faith claims reciting only 'bare-bones' conclusory allegations that are not accompanied by factual allegations sufficient to raise the claims to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss." *Camp v. N.J. Mfrs. Ins. Co.*, No. 16-CV-1087, 2016 U.S. Dist. LEXIS 74496, at *11 (E.D. Pa. June 8, 2016); *see also Smith v. State Farm Mutual Automobile Ins. Co.*, 506 F. App'x 133, 136-37 (3d Cir. 2012) (affirming dismissal of bad faith claim where the Complaint consisted of conclusory statements); *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (holding "a plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements[]" in order to survive a motion to dismiss) (citation omitted). "The Third Circuit Court of Appeals has expressed that 'mere negligence or bad judgment is not bad faith' . . . Rather, bad faith means a 'frivolous or unfounded refusal to pay proceeds of a policy . . . a breach of a known duty . . .

through some motive of self-interest or ill will.'" *Brown v. LM Gen. Ins. Co.*, CIVIL ACTION No. 21-2134, 2021 U.S. Dist. LEXIS 161974, at *5 (E.D. Pa. Aug. 26, 2021) (internal citations omitted).

Upon review of the allegations set forth in Plaintiffs' Amended Complaint, this Court finds Plaintiffs have failed to cure the deficiencies delineated in its prior Opinion. (ECF No. 8.) In particular, the court previously determined Plaintiffs' Complaint was devoid any allegations regarding *what* information or documents Defendant possessed *when*, and for *how long*. Without same, it is impossible to assess whether or not there was a significant delay in handling the claim and if so, whether Defendant's handling of the matter could plausibly be perceived as unreasonable. Although Plaintiffs have amended their Complaint to include new averments regarding a $5,000 settlement offer by Defendant (Am. Compl. ¶ 16) that was followed by a policy-limit offer after Raymond Kelly's statement was taken under oath for purposes of the underlying claim (Am. Compl. ¶ 21), this is simply not enough. Again, the court is left with no indication as to the *dates* upon which each of these events occurred, the *individual(s)* involved, or the extent—if any— to which new information might have been provided as a basis for the policy-limit tender. *See Rickell v. USAA Cas. Ins. Co.*, Civil No. 1:18-CV-1279, 2018 U.S. Dist. LEXIS 189257, at *10 (M.D. Pa. Nov. 6, 2018) ("The mere allegation that Plaintiffs provided documentation and Defendant has failed to make a reasonable settlement offer, however, does not support an inference of bad faith without additional factual support such as the complexity of the claim and the time passed between the date Plaintiffs supplied the necessary information and the date the complaint was filed."). Accordingly, the fact that Plaintiffs herein perceived Defendant's initial offer to be untimely and insufficient is irrelevant for purposes of a bad faith analysis. *See Bond v. Geico,* Case No. 2:21-cv-02966, 2021 U.S. Dist. LEXIS 204778, at *5

(E.D. Pa. Oct. 25, 2021) (granting motion to dismiss bad faith claim where the plaintiff "ha[d] not alleged facts from which the Court [could] determine that [the defendant] acted without a reasonable basis in the timing or amount of payment. [The plaintiff] has not explained when the accident occurred, when he filed a claim, what he provided [the defendant] at each stage of the process, and when [the defendant's] subsequent offers were made."). While the new averments regarding the two offers by Defendant could potentially be indicative of whether Defendant had a reasonable basis for its actions (or inaction), the same is impossible to discern from the Amended Complaint.

In light of the additional information set forth in Plaintiffs' Amended Complaint, this Court concludes the requisite specificity for successfully pleading a bad faith claim has not been met.

### B. Amendment

Amendments to a Complaint may be made as a matter of course, but only if the amendment occurs within: "21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

Inasmuch as the conditions for amendment as a matter of course are absent in this case, amendment is only permitted by leave of court or with the written consent of the opposing party. Fed. R. Civ. P. 15(a)(2). Defendant herein has not provided written consent, therefore, leave of court must be obtained in order for Plaintiffs to amend. It is well settled that leave must be freely granted "when justice so requires." *Id*. However, leave may be denied where undue delay, bad faith, dilatory motive, prejudice, or futility are present. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In examining futility, the legal standards of Rule 12(b)(6) must be applied. *Id*.

Counsel for Plaintiffs herein has responded to Defendant's Motion with a proposal of three alternative resolutions: (1) denial of the motion; (2) granting of the motion with leave for Plaintiffs to amend; or, (3) granting of the motion and dismissal of the case without prejudice to refile.  In proposing this third option, counsel for Plaintiffs states "[t]he Plaintiffs Raymond Kelly and Patricia Kelly should not be denied their Day in Court [sic] due to any perceived shortcoming of their Counsel."  (Pls.' Br. Opp'n Mot. Dismiss 9, ECF No. 12 at 24.)  He then cites to cases in which the court granted motions to dismiss and permitted the plaintiff leave to amend.  As such, this Court is uncertain as to the intended difference between counsel's second and third alternatives.  Nevertheless, although Plaintiffs herein have already had an opportunity to amend, this Court cannot conclude that further amendment would be futile.  The majority of items set forth in Paragraph 27 of Plaintiffs' Amended Complaint necessarily happened on or about certain days and amongst certain individuals.  These are basic details counsel should be able to readily discern via file review and communication with his clients.  As it stands now, Plaintiffs' Amended Complaint gives this Court absolutely no indication as to the amount of time that passed between each of the complained-of actions or inactions.[2]  Nor do Plaintiffs provide the court with any indication as to the extent of medical information Defendant was in possession of or how long Defendant possessed same before making its initial offer.[3]  Similarly absent, are any facts pertaining to the dates upon which the $5,000 and $15,000 offers were

---

[2] For instance, Plaintiffs allege "At times relevant to this cause of action, Defendant knew of, or recklessly disregarded, its lack of a reasonable basis in undervaluing Plaintiffs' claim for Underinsured Motorist Benefits." (Am. Compl. ¶ 19.)  If the times were "relevant to this cause of action[,]" they should not be absent from the Amended Complaint.

[3] Plaintiffs allege "After review of Plaintiffs' relevant medical documents, as well as documents related to the underlying Third-Party claims of the Plaintiffs, the Defendant wrongfully and unfairly offered only Five Thousand ($5,000.00) Dollars [sic] to the Plaintiffs herein in full and final settlement of their claims for Underinsured Motorist Benefits."  (Am. Compl. ¶ 16.)  When was "after"?  What were the "relevant medical documents"?

made.[4]  In fact, this Court still has no indication as to when the initial claim for Underinsured Motorist Benefits was made[5]—the only dates Plaintiffs provide, are the effective dates of the Policy and the date of the accident.  Again, this is simply not sufficient but yet, potentially curable.  Accordingly, Plaintiffs shall be granted one last opportunity to amend.

V.     **Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss Count III of Plaintiffs' Amended Complaint shall be granted with leave for Plaintiffs to file a Second Amended Complaint.

An appropriate Order follows.

---

[4] Plaintiffs allege "[A]fter the conclusion of the Deposition . . . Defendant tendered its Policy Limits of coverage to the Plaintiffs in settlement of the Underinsured Motorist Benefits claims." When did the deposition occur?  Did Defendant tender its offer that same day?

[5] Plaintiffs allege "After resolution of Plaintiffs' Third-Party action against the Tortfeasor Perry Miller, the Plaintiffs submitted their claim for Underinsured Motorist Benefits to the Defendant herein." (Am. Compl. ¶ 15.)  When was the Third-Party action resolved?  On what date did Plaintiffs submit their Underinsured Motorist Benefits claim to Defendant?