## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYMOND KELLY and** | : | |
| **PATRICIA KELLY** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | **No. 20-05661** |
| **v.** | : | |
| | : | |
| **PROGRESSIVE ADVANCED** | : | |
| **INSURANCE COMPANY** | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                            **September 18, 2023**

Plaintiff Raymond Kelly was injured in a motor vehicle collision when another motorist, Perry Miller, struck the vehicle behind Kelly, which in turn struck Kelly's vehicle. After Defendant Progressive Advanced Insurance Company ("Progressive"), Kelly's insurance carrier, offered Kelly and his wife Plaintiff Patricia Kelly $5,000 to settle their claim for Underinsured Motorist ("UIM") benefits, they sued Progressive for bad faith pursuant to 42 Pa. Cons. Stat. § 8371. Progressive moves for summary judgment. (ECF 31.) The Court grants its Motion for the following reasons.

## I.     BACKGROUND

### A.  Facts

At approximately 3:35 p.m. on November 6, 2016, Raymond Kelly was stopped at a red light going northbound on the 9800 block of Frankford Avenue in Philadelphia. (Pls.' Stmt. of Material Facts, ECF 40, Ex. R, at 11.) While he was stopped, Miller's vehicle struck the rear of Kathleen Walsh's vehicle, which was pushed forward into the rear of Kelly's vehicle. (*Id.* at 11-12.) Kelly was 72 years old at the time. (Def.'s Stmt. of Material Facts, ECF 36 at ¶ 25.)

Kelly had surgery on his cervical spine in or around 2001—*i.e.*, before the collision—and

following that procedure, he had been asymptomatic of neck problems. (*See* Pls.' Ex. D., ECF 40-1 at ECF p. 22.) However, after he was rear-ended, Kelly reported "progressive neck pain and occipital headaches which could be quite severe," and "pain going into the left scapular/shoulder region . . . and down his arm, associated with numbness and tingling." (Pls.' Resp., Ex. P., ECF 50-6 at 2.) His doctor, Andrew Freese, "recommended conservative therapy, including injections, but [Kelly] wanted to proceed with surgery" and ultimately had a second operation in April 2018. (*Id.*) Kelly "initially did well" but, by January 2020, he had developed "severe symptoms," leaving him "with permanent deficits, pain, muscle spasms, disability and the psychological impact of these symptoms . . . ." (*Id.*)

In 2018, Plaintiffs filed a third-party lawsuit against Miller seeking to recover for damages arising from the collision ("the Third-Party Action"). (ECF 36 at ¶ 8.) They settled the Third-Party Action in or around June 2020 for $275,000. (*Id.* ¶ 20.) Plaintiffs paid $28,869.70 from the settlement funds to satisfy a subrogation lien for medical services and bills incurred in treating Kelly's injuries. (ECF 40 at ¶ 28.)

When Kelly was rear-ended, he was insured pursuant to a Progressive-issued automobile insurance policy with $15,000 per-person nonstacked UIM coverage. (Def.'s Stmt. of Material Facts, ECF 36 at ¶ 2-3.) Progressive opened a UIM claim on May 23, 2018, after Plaintiffs filed a claim for UIM benefits. (*Id.* at ¶ 5.) Plaintiffs began communicating with Mary Margaret Burke, a Progressive claims representative. (Def.'s Ex. C (claim notes), ECF 36-3 at 10.) She requested Kelly's medical records, including records from his prior surgery. (ECF 36 at ¶ 7.) Between 2018 and 2020, Burke received updates from Plaintiffs' counsel on discovery and developments in the Third-Party Action. (ECF 36-3 at 19-23.) On June 6, 2020, Burke's claim notes reported that Kelly underwent an independent medical examination ("IME") on October 21, 2019 during discovery in

the Third-Party Action and that the doctor had reported there was "no objective evidence" to support Kelly's subjective complaints, that he had "chronic degen[eration]," and an "EMG did not verify nerve damage." (ECF 36-3 at 24; *see also* ECF 36 at ¶ 18.) On July 2, 2020, Burke noted that she had "obtained confirmation" of the $275,000 bodily injury settlement in the Third-Party Action.  (ECF 36-3 at 24.) Then, after receiving extensive records in August 2020, Burke noted that she could not determine whether Kelly's symptoms resulted from the November 2016 accident or if they related to pre-existing degeneration. (ECF 36-3 at 25-26.) As a result, she requested additional records from Plaintiffs' counsel. (ECF 36-3 at 32-34; *see also* ECF 36 at ¶ 34; Def.'s Ex. D, ECF 36-4.) Burke received additional records in September 2020, including a January 16, 2020 doctor's report prepared after a film review which opined that there was "no imaging evidence of an injury" resulting from the accident. (ECF 36-3 at 33-34; *see also* ECF 36 at ¶¶ 36-41.)

Plaintiffs sued Progressive in October 2020. (ECF 1-1 at ECF p. 2.) In December 2020, Progressive's counsel emailed Plaintiffs' counsel offering $5,000 to settle the UIM claim and requesting dates to depose Raymond Kelly. (ECF 36-3 at 40; *see also* Def.'s Ex. F, ECF 36-6.) Plaintiffs rejected that offer and later demanded $22,500 to resolve the UIM claim. (ECF 36-3 at 43-45.) Progressive's counsel then offered $7,000, which Plaintiffs also rejected. (*Id.* at 45; *see also* Def.'s Ex. K; ECF 36-11; Def.'s Ex. L, ECF 36-12.) Following further review of Raymond Kelly's medical records and his deposition in May 2021, Progressive offered to settle for the $15,000 UIM policy limit. (ECF 36-3 at 46-50; Def.'s Ex. M, ECF 36-13.) Plaintiffs' counsel requested a UIM release and Progressive issued a check in that amount on October 7, 2021. (ECF 36-3 at 52-53.)

### B.  Procedural History

Plaintiffs initiated this action in the Court of Common Pleas of Philadelphia County, and Progressive removed it to this Court pursuant to 28 U.S.C. § 1441. (ECF 1.) Initially, the action included claims for: breach of contract (Count 1); loss of consortium (Count II); violation of Pennsylvania's bad faith statute (Count III); and violation of the Pennsylvania Unfair Insurance Practice Act and the Consumer Protection Act (Count IV). (ECF 8.) Progressive moved to Dismiss Counts III and IV. (ECF 3.) Plaintiffs conceded to the dismissal of Count IV and this Court granted the motion as to Count III, with leave to amend. (ECF 8.) Plaintiffs amended their Complaint, (ECF 10), and Progressive filed another motion to dismiss. (ECF 11.)[1] The Court granted Progressive's motion to dismiss all but Plaintiffs' bad faith claim and granted them leave to amend a second time, which they did. (ECF 17 at 1; ECF 20.)

Progressive moved for summary judgment on the remaining bad faith claim (ECF 31) before the Court referred the case to arbitration. (ECF 34.) The Court considers its Motion now.

### II.    STANDARD OF REVIEW

Summary judgment is proper if the movant proves that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). A fact is "material" if it may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A mere scintilla of evidence supporting the nonmoving party, however, will not suffice. *Id.* at 252. Rather, the nonmovant must "set forth

---

[1] At this juncture, the case was reassigned from the Honorable C. Darnell Jones, II to the undersigned. (ECF 16.)

specific facts showing that there is a genuine issue for trial." *Id.* at 256.

While considering Progressive's Motion, the Court must view the evidence in the light most favorable to the non-movant—*i.e.*, Plaintiffs—and draw all reasonable inferences in Plaintiffs' favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

## III.   DISCUSSION

Plaintiffs have not met their burden of showing that a reasonable juror could find, by clear and convincing evidence, that Progressive acted in bad faith. *See Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (adopting the two-part test for bad faith from *Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. Ct. 1994)). To do so, they must present evidence that Progressive (1) did not have a reasonable basis for denying benefits under their policy and that it (2) knew of or recklessly disregarded its lack of a reasonable basis. *Id.* The evidence must be "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not [Progressive] acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp.2d 580, 587 (E.D. Pa. 1999)). Moreover, Progressive "is entitled to summary judgment if it can show a reasonable basis for its actions" because "the essence of a bad faith claim is the denial of benefits without good reason . . . ." *Spinelli v. State Farm Mut. Auto. Ins. Co.*, No. 08-1455, 2009 WL 723399, at *7 (E.D. Pa. Mar. 17, 2009) (citing, *inter alia, Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 360 (E.D. Pa. 1997)); *see also Whalen v. State Farm Fire and Cas. Co.*, 183 F. Supp.3d 672, 682 (E.D. Pa. 2016) (granting summary judgment to an insurer on a bad faith claim where the insurer was responsive to the insured's claims and the insured failed to

present clear and convincing evidence that the insurer's response to her claim was deceptive).

Progressive argues summary judgment should be granted in its favor because "there is not one iota of evidence that [it] lacked a reasonable basis for its offers, much less clear and convincing evidence that [it] knew of or recklessly disregarded the lack of any reasonable basis for its claims handling." (ECF 32 at 11; *see also id.* at 3 (citing *Rancosky*, 170 A.3d at 364).) Plaintiffs respond that "an action for bad faith may extend to the insurer's investigative practices." (ECF 39 at 7-8 (quoting *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 906 (Pa. Super. 1999)).) They contend Progressive acted in bad faith because, before it offered to settle their UIM claim for $5,000 instead of the $15,000 policy limit, it "never had Raymond Kelly examined by a [p]hysician of its choice" and never had a physician review his medical records in its evaluation of his claim. (*Id.* at 14-15.)

Plaintiffs have not, however, set forth sufficient evidence to support a bad faith claim based on an insufficient investigation. The Third Circuit's decision in *Miezejewski v. Infinity Auto Insurance Company*, is instructive. 609 Fed. App'x 69 (3d Cir. 2015).[2] There, an insurer made a $5,000 offer to settle a claim based upon an insured's initial submission of materials and noted that "[a]nything more than that could require some additional discovery." *Id.* at 71. As here, the insurer ultimately tendered the $15,000 policy limit the insured sought. *Id.* at 72. The district court granted partial summary judgment to the insurer, finding that "a jury could not find, by clear and convincing evidence, that [its] course of conduct did not rest on a reasonable basis." *Id.* at 71. The

---

[2]     While *Miezjewski* predates *Rancosky*, in which the Pennsylvania Supreme Court formally adopted *Terletsky*'s two-part test for bad faith, the Third Circuit nonetheless applied the same framework. *See Miezjewski*, 609 F. App'x 69, 72 (3d Cir. 2015) ("The Superior Court has held that to prevail under the bad faith statute, 'the insured must show that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.'") (quoting *Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1148 (Pa. Super. Ct. 2013)); *see Rancosky*, 170 A.3d at 374 ("[W]hile this issue has evaded appellate review from this Court, the longstanding standard in Pennsylvania has been the Superior Court's two-pronged test in *Terletsky*[.]").

Third Circuit affirmed, reasoning that the insurer's "pre-litigation settlement offers were within . . . [the] initial valuation of the UIM claim," were not final, and could have increased upon further investigation. *Id.* at 72.

The facts of this case parallel those in *Miezejewski*, and Plaintiffs make no attempt to distinguish it in their response to Progressive's Motion. Progressive made an initial settlement offer within policy limits before its claims representative had "received all the records she requested," (ECF 32 at 10), and it ultimately paid Plaintiffs the full policy limit upon further investigation. (*Id.* at 11.) An insurer's "failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012).

Plaintiffs offer no authority for their suggestion that Progressive's duty of good faith obligated it to have Raymond Kelly examined or his records reviewed by its own physician—as opposed to relying on its claims representative's review of his medical records—before tendering the initial $5,000 offer to settle Plaintiffs' UIM claim. Further, Progressive has set forth evidence to show it was responsive to Plaintiffs' claim and it took reasonable steps to gather information and investigate Kelly's injuries, given uncertainty about whether his symptoms arose from the motor vehicle collision or from his prior surgery. (*See* ECF 36-3 at 25-26.) Burke continued to pursue information about Kelly's injuries even after Plaintiffs' own counsel expressed doubt in May 2019 as to whether their claim would "rise to the UIM level." (ECF 36-3 at 20.) By the time Progressive offered $5,000 to settle the UIM claim in December 2020 (ECF 36-3 at 40), Burke had already reviewed records including the Third-Party litigation's IME report suggesting that Kelly's "subjective complaints were not supported by objective findings." (ECF 36 at ¶¶ 38-39.) There is no doubt that Kelly underwent a second surgery and has complained of ongoing symptoms

since the motor vehicle collision, but that does not mean Progressive was unreasonable when it declined to immediately settle Plaintiffs' UIM claim at the policy limit. Plaintiffs' conclusory assertions are insufficient to overcome Progressive's showing that it acted with a reasonable basis throughout the claims process. *See Jung*, 949 F. Supp. at 360. Moreover, even if Plaintiffs had shown that Progressive had no reasonable basis for denying an immediate payment of the full UIM policy limit, they have not set forth clear and convincing evidence to show that Progressive knew of or recklessly disregarded any lack of a reasonable basis for its failure to do so. *Rancosky*, 170 A.3d at 365.

## IV.    CONCLUSION

The Court grants summary judgment in favor of Progressive because, on the record before it, no reasonable juror could find bad faith by clear and convincing evidence.

An Order consistent with this Memorandum will be docketed separately.